JACOBS v. WILLIAMS et al. *
No. 5025.

Court of Appeal of Louisiana. Second Circuit.
May 2, 1935.

Robert J. Newson, of Shreveport, for appellant.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, for appellees.

MILLS, Judge.

State Highway No. 171, paved to a width of eighteen feet, with four-foot dirt shoulders, runs north and south past the residence of Leon H. Jacobs, in the city of Mansfield.

*Rehearing denied June 4, 1935.

On the extreme west side, across the road from the house, is the family mail box. On the shoulder between it and the paving is just room enough for an automobile to park.

On the 5th day of September, 1934, at about 9 o'clock in the morning, the mail carrier, traveling south over his route, pulled off the paving to his right and stopped his car alongside this mail box. In it he found some money and a note from Mrs. Jacobs asking for some stamps and a post card, which Charles Forey Jacobs, the lady's seven year old son, came across the road to get. The boy went around the mail car and mounted its right running board. Receiving the articles, he stepped down and walked north around the back of the car to return home. Just as he was about to step from behind the car, a small truck, driven north by W. A. Ross, accompanied by W. M. Giddens, passed, causing Charles to retreat. After this truck had passed, the boy, looking after it and paying no attention to traffic from the south, ran from behind the mail car into the side of an oil truck following about 150 feet behind the Ross truck, driven by J. W. Williams and carrying as a passenger its owner, R. A. Williams. The boy ran into and was struck by a timber, which was a part of the floor supporting the gasoline tank, and which extended two or three feet over the side of the chassis. He was knocked back to the pavement and was picked up from a spot estimated at from one to two feet west of its center line. His father brings this suit against R. A. Williams, J. W. Williams. and the Fairmount Oil & Gas Corporation, alleging that they were engaged in a joint adventure in the sale of oil products.

The acts of negligence alleged are that the truck was being driven on the left or wrong side of the road and at an excessive speed. These are denied by R. A. and J. W. Williams, who affirmatively maintain that the proximate cause of the accident was the carelessness of the boy in running suddenly and unexpectedly, regardless of traffic, from his concealed position and into the side of the truck; and, in the alternative, that his heedless action constituted contributory negligence.

The answer of the other defendant amounts to a general denial.

In the lower court there was judgment rejecting plaintiff's demand, from which he has appealed.

There is no doubt that the accident happened as stated above. The occupants of the oil truck did not and could not see the boy un- til he ran from behind the mail car into their truck, hitting it back of the cab about the middle. They did not know that they had struck the boy and did not stop until they had gone two or three hundred feet. It is not alleged that they failed to keep a proper lookout or were negligent in not seeing the boy.

▮ It is not proven to our satisfaction that the truck was on its wrong side of the road. It is reasonable to assume, from where he was picked up, and from the testimony of Mr. Giddens, the only eyewitness of the actual collision, that the boy was struck on the east side of the center line and knocked back. Mr. Giddens, a passenger in the first truck, noticed the dangerous position of the boy and looked back through the rear glass to see if the boy made it across. He says: "He ran into the side of the car and it just looked— it looked about like whenever he hit the car, it knocked his head kind of northwest and it might have been his foot sticking over the black mark." The truck must have been on its proper side or so close to the black line that the difference of a foot or two could not have affected the accident.

▮ Several members of the Jacobs family and a neighbor and his wife testify that the truck was traveling at an excessive speed, exceeding 35 miles per hour. This is denied by R. A. Williams, who says they were not making over 15 or 20 miles. J. W. Williams, who only testified when called on cross-examination, was not asked about the speed. Neither the mail carrier nor Giddens noticed the speed of the truck. They do not say it was excessive. It would seem that had it been, the fact would have been impressed upon them. The only evidence as to city regulation is that a sign about a quarter of a mile south of the Jacobs home read: "Mansfield City Limits—Speed 30 miles per hour." It would appear that a speed of 30 miles was authorized. Our attention is called to the provisions of Act No. 21 of 1932, limiting the speed of trucks weighing, with or without load, over 6,000 pounds, to 15 miles in incorporated municipalities, but it is not shown that the truck in question comes within this class. As the boy was not run into by the truck, but on the contrary heedlessly ran into it, we do not see that its speed was a substantial or proximate cause of the accident. Hattaway v. F. Straus & Son (La. App.) 158 So. 408, 410.

▮ It is too well settled to require citation that negligence, whether actual or per se because of the violation of a safety law, is

only actionable when it is a proximate cause of an injury.

The facts in this case are very similar to those in the recent case of Moreau v. Southern Bell Tel. & Tel. Company (La. App.) 158 So. 412, except that the present case lacks the one essential element upon which liability was imposed in the Moreau Case, namely, the fact that defendant's driver, having seen other children cross ahead of a stopped car, should have anticipated the presence of one behind it. In the present case, Williams had no warning of, or reason to anticipate, the presence of the child behind the mail car, or its action in running heedlessly into the truck.

Holding this view of the matter, it is unnecessary to determine whether the age of the boy relieved him from the application of the doctrine of contributory negligence.

We find no manifest error in the judgment appealed from. It is accordingly affirmed.